USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5/24/17

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
UNITED STATES OF AMERICA

-against-

**OPINION & ORDER**

15 CR 319 (KMW)

SANDRA ZONGO,
    a/k/a "Akiwa Gizzel,"
    a/k/a "Sandra Nelson,"

                        Defendant.
----------------------------------------------------------------x

KIMBA M. WOOD, District Judge:

On January 27, 2017, a jury found defendant Sandra Zongo guilty on all four counts of Superseding Indictment S2 15 CR 319 (the "S2 Indictment"). The defendant now moves, pursuant to Rules 29 and 33 of the Federal Rules of Criminal Procedure, for a judgment of acquittal and for a retrial on all counts of the S2 Indictment. For the reasons set forth below, the Court DENIES the defendant's Rule 29 motion for a judgment of acquittal, and DENIES the defendant's Rule 33 motion for a new trial.

## I. RULE 29 MOTION FOR A JUDGMENT OF ACQUITTAL

### a. *Background*

The defendant moves for a judgment of acquittal on Count Four of the S2 Indictment on the ground that the Government failed to prove each and every element of the crime charged

1

beyond a reasonable doubt. Count Four charged the defendant with attempted wire fraud for sending "documentation falsely representing her residence, employment, and income, in an effort to obtain benefits disbursements by means of ... interstate wire transfer." (Indictment at 3-4).

The government argued to the jury that the defendant committed attempted wire fraud when she submitted an application to the New York Human Resources Administration ("HRA") for Supplemental Nutrition Assistance Program ("SNAP") benefits. It argued that her application contained two materially false statements relating to her employment, income, and rent payments. First, Ms. Zongo submitted a letter signed by "S. Young" claiming that she was an intern for "SDG Cluster Policy In Action 4 United Nations Implementation" and earned an income of $400 per month, which was false. (Def. Mem. at 2). Second, Ms. Zongo submitted a form signed by a person named Mawahib Mohammed, which claimed that the defendant paid $400 in rent per month to reside in "Room #2" of "Apartment #528" at 134 East 43rd Street in Manhattan, which was also false. (*Id.* at 3). The jury found the defendant guilty of attempted wire fraud.

Defendant now argues that "no rational jury could render a verdict of guilty on Count Four because: (1) the government failed to prove that Ms. Zongo made a false statement regarding her employment or her rent expenses; and (2) none of the alleged false statements, individually or collectively, was material. (*Id.* at 5).

### b. *Relevant Law*

A defendant who files a Rule 29 motion "bears a heavy burden, as the standard of review is exceedingly deferential." *United States v. Brock*, 789 F.3d 60, 63 (2d Cir. 2015). The Rule permits a district court to enter a judgment of acquittal on a count of conviction only if it finds that

2

the evidence on that count is "insufficient to sustain a conviction." Fed. R. Crim. P. 29. In deciding a motion for a judgment of acquittal under Rule 29, a court must "view the evidence in the light most favorable to the government, crediting every inference that could have been drawn in the government's favor, and deferring to the jury's assessment of witness credibility and its assessment of the weight of the evidence." *United States v. Chavez*, 549 F.3d 119, 124 (2d Cir. 2008). Thus, a jury verdict must be upheld if "any rational trier of fact could have found the essential elements of a crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

Count Four of the S2 Indictment charged the defendant with attempted wire fraud in violation of 18 U.S.C. § 1349. In order to convict on this count, the jury had to find beyond a reasonable doubt (1) that the defendant knowingly and willfully participated in a scheme to defraud by materially false and fraudulent pretenses with specific intent to defraud through the use of interstate wires, *see United States v. Bouyea*, 152 F.3d 192, 194 (2d Cir. 1998); and (2) that the defendant took a "substantial step" in an effort to bring about or accomplish the crime, *see United States v. Farhane*, 634 F.3d 127, 146 (2d Cir. 2011).

A false statement is fraudulent if it was made with the intent to deceive. *United States v. Mahaffy*, 285 F. App'x 797, 799 (2d Cir. 2008). The fraud statutes are violated by both affirmative misstatements and material omissions that the defendant had a duty to disclose, *United States v. Autori*, 212 F.3d 105 (2d Cir. 2000), and a defendant's fraudulent intent "may be proven entirely through circumstantial evidence. ..." *United States v. Romano*, 794 F.3d 317, 335 (2d Cir. 2015). In order to prove that the fraudulent statements were material, the statements must have had "a natural tendency to influence, or [were] capable of influencing, the decision of the [HRA]." *Neder*

3

*v. United States*, 527 U.S. 1, 16 (1999).

### c. *Discussion*

The government presented extensive evidence at trial to prove that the statements at issue were both false and material. Thus, the jury's decision to convict the defendant on Count Four of the S2 Indictment was reasonable, and supported by sufficient evidence.

#### i. *The Statements were False*

##### a. The Defendant's Internship Claim

The government presented sufficient evidence to support the jury's conclusion that the defendant's statement on her SNAP benefits application that she was employed as an "intern" was false. The evidence at trial overwhelmingly established that at the time that she submitted her application, the defendant held herself out as the Deputy Commissioner of Foreign Affairs for the Office of the Commissioner. (Mem. in Opp'n. at 7). Almost every witness who testified for the Government indicated that the defendant represented to them that she was the "Deputy Commissioner."[1] As the Government notes in its opposition papers, not one witness testified that the defendant ever held herself out as an "intern" for any organization, let alone an intern for "SDG Cluster Policy In Action 4 United Nations Implementation." *Id.*

Aside from testimony from numerous witnesses who knew the defendant only as the "Deputy Commissioner," the jury also received copies of the two allegedly fraudulent documents the defendant submitted along with her SNAP benefits application. The documents were found on

---

[1] The Government points the Court's attention to the trial transcript at 148:12-13 (testimony of Kevin Levine), 236:3-4 (testimony of Ashley Kortan); 380:22-23 (testimony of Teresa Valenzuela); 465:6-17 (testimony of Manek Irani); 517:16-17 (testimony of Detective Frank DiFranco); 644:8-12 (testimony of Lucia Kaiser); 856:22-23 (testimony of Special Agent Michael Condon); 941:2-14 (testimony of Robert Eisenberg).

the defendant's computer in an open-source, editable form. (GX 251). From this evidence, the jury could have reasonably concluded that the defendant fraudulently created these forms herself, especially considering ample testimony throughout the trial that established the defendant's ability to create fake documents. The parties also provided the jury with a stipulation that established that the New York State Department of Labor was unable to find any record of any wage paid to the defendant during the time for which she claimed to be making $400 per month as an intern. (GX 61).

The defendant contends that at the time she submitted this employment letter to the HRA, she may well have been *both* the Deputy Commissioner for Foreign Affairs and an intern for another organization. (Def. Mem. at 5-6). The defendant further argues that the New York State Department of Labor Stipulation does not definitively prove that she was not an intern, even if she ultimately reported no income from that internship. *Id.* But in urging the Court to grant her motion because of these possibilities, the defendant ignores the extremely heavy burden she bears. Viewing the evidence in the light most favorable to the government, as the Court must, a rational jury could have reasonably concluded that the defendant made a false statement when she claimed to be an intern at "SDG Cluster Policy In Action 4 United Nations Implementation."

### b. The Defendant's Residence Claim

The government also submitted sufficient evidence to prove that the defendant's statements with regard to her residence and monthly rental payment were false. The defendant concedes that she lied when she claimed to have lived at 134 E. 43rd Street, which is a UPS store. (Def. Mem. at 6). However, she maintains that her statement was not entirely false; she could have still been

5

paying $400 in monthly rent at the time she submitted her SNAP benefits application, even if she was not living at the address she listed. *Id.*

Based on the evidence presented at trial, the jury could have reasonably concluded that the defendant was neither living in, nor paying rent for, an apartment at the time of her application, and instead was staying in a number of different hotels throughout New York City. The government presented the jury with numerous fake purchase orders created and submitted by the defendant as payment for her long-term stays in various Manhattan hotels. (*See* Mem. in Opp'n. at 10-11). The testimony and documentary evidence presented at trial overwhelmingly suggested that the defendant was living in a hotel at the time she submitted her SNAP benefits application. Aside from the defendant's own statement on the application itself, neither party presented any evidence to the contrary. (*See* Mem. in Opp'n. at 9-11).

The defendant contends that her long-term hotel stays do not eliminate the possibility that the she was simultaneously paying $400 in monthly rent. Once again, the defendant ignores the highly deferential standard with which the Court must evaluate the government's evidence, and the jury's verdict. The evidence presented was more than sufficient to satisfy the "falsity" element of Count Four, with respect to both of the defendant's statements.

### ii. *The Statements were Material*

The defendant further argues that even if her statements were false, her application was merely preliminary, and her failure to complete the SNAP benefits application renders any misstatements immaterial. Specifically, she notes that because her misstatements were submitted in connection with an application for "expedited review" for SNAP benefits eligibility, rather than

an application for the benefits themselves, any misstatement could not have affected an ultimate benefits eligibility determination. The Court disagrees.

The government called one witness, Jahnara Glover, to testify to the materiality of the defendant's misrepresentations in her SNAP benefits application. Ms. Glover, the Executive Regional Manager of the HRA, stated unequivocally that the defendant's assertions regarding her income and rent payments factored into the Administration's decision to deny her benefits application. (Mem. in Opp'n. at 14). Specifically, Ms. Glover testified that an individual's qualification for SNAP benefits depends on whether her monthly rent payment exceeds her monthly income. *Id.* An applicant's assertions with respect to her income, employment, and rental expenses are thus material to a determination of benefits eligibility, as the jury ultimately found. Ms. Glover provided further support for the jury's conviction on this count when she testified that the HRA uses the expedited screening form the defendant submitted "to determine [an individual's] eligibility for expedited food stamp processing and to determine whether or not they are going to get a benefit." (Mem. in Opp'n. at 13 (citing Tr. at 907:11-15)). And, as the Government notes, the materiality of the defendant's assertions is "conclusively established" by the outcome of her application: she was ultimately denied benefits, because she did not show that her rental expenses exceeded her income in her interview with the HRA. (*Id.* at 14 (citing Tr. at 913:1-8)).

The defendant cites one case from the Tenth Circuit, *United States v. Camick*, 796 F.3d 1206 (10th Cir. 2015), to support her argument that the "provisional" nature of her application renders any misstatements immaterial. *Camick* is not persuasive in this District, and it is also easily

7

distinguishable from the facts at hand. In that case, in which the court evaluated the materiality of a fraudulent statement made on a preliminary patent application, the application in which the statement was made was a "placeholder ... that [was not] examined for patentability." (*Id.* at 1218). Because the misrepresentation was incapable of influencing the Patent and Trademark Office's decision (the evidence definitively proved that the alleged misrepresentation would not even be viewed by the Patent and Trademark Office), the court found the statements on the provisional application immaterial to an ultimate patentability determination. *Id.*

In the defendant's case, copious evidence supported the jury's reasonable conclusion that the statements were dispositive of the HRA's benefits determination. The defendant presents no controlling law that would lead the Court to conclude that the defendant's ultimate failure to obtain benefits, or her failure to fully complete the application, in some way rendered her misstatements immaterial. The defendant's request that the court find otherwise runs contrary to the standard set forth by the law governing Rule 29 motions.

Because the defendant's statements were also material, the government provided sufficient evidence from which the jury could conclude that the defendant's actions satisfied each element of Count Four of the S2 indictment. For these reasons, the defendant's Rule 29 motion is denied.

## II. RULE 33 MOTION FOR A NEW TRIAL

### a. *Background*

The defendant also moves for a new trial, pursuant to Rule 33 of the Federal Rules of Criminal Procedure. The defendant contends that prejudicial spillover from the jury's conviction

on Count Four led them to convict on Counts One through Three of the S2 Indictment, and that the government unfairly inflamed the jury in pursuit of a conviction on Count Four.

### b. *Relevant Law*

Rule 33 of the Federal Rules of Criminal Procedure provides that a court may "vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33. In deciding a motion for a new trial pursuant to Rule 33, a court may weigh the evidence and assess the credibility of witnesses. Rule 33 "gives the trial court 'broad discretion ... to set aside a jury verdict and order a new trial to avert a perceived miscarriage of justice.'" *United States v. Ferguson*, 246 F.3d 129, 133 (2d Cir. 2001) (citing *United States v. Sanchez*, 969 F.2d 1409, 1413 (2d Cir. 1992)). Such discretion "is only exercised, however, in the most extraordinary circumstances." *U.S. v. Locascio*, 6 F.3d 924, 949 (2d Cir. 1993) (citing *United States v. Imran*, 964 F.2d 1313, 1318 (2d Cir.1992), *cert. denied,* 506 U.S. 1009, 113 S.Ct. 626 (1992)).

### c. *Discussion*

The evidence the Government presented at trial was more than sufficient to support a finding by the jury that the defendant was guilty of Counts one through Four. The defendant alleges, however, that prejudicial spillover from the evidence related to Count Four infected the jury's deliberations with respect to the remaining counts. She argues that the government charged the defendant with, and sought to prove, Count Four, in order to present otherwise inadmissible evidence that helped prove Counts One through Three. Specifically, the defendant contends that the government's evidence with respect to Count Four served (1) to negate the defendant's claim

at trial that she believed herself to be the Deputy Commissioner of Foreign Affairs, and (2) to allow the jury to conclude that the defendant could edit and create fake documents. It may well be true that the defendant's fraudulent application to the HRA aided the jury in concluding that the defendant knew that her "Deputy Commissioner" title was a fiction, and that the she was willing and able to fraudulently create documents. However, the fact that the jury's reasonable finding of guilt on Count Four might have aided in a finding of guilt on the remaining counts does not render the government's evidence with respect to Count Four unduly prejudicial.

The defendant also argues that the government unnecessarily inflamed the jury in pursuit of a conviction on Count Four, and that the evidence the government presented unfairly tarred her as a "welfare cheat." (Def. Mem. at 15-16). The Court disagrees. The jury was made well aware of the defendant's extravagant living and spending habits through the evidence presented in support of Counts One through Three. There was substantial testimonial and documentary evidence of the defendant's long stays at well-appointed midtown hotels, her expensive tab at a Manhattan restaurant, and her taking a table at a high-profile charity benefit. All of this evidence significantly minimizes the possibility that the jury was inflamed by the government's attempt to prove that Ms. Zongo submitted a fraudulent application for welfare benefits. Moreover, the government carefully cabined the language it used to describe the defendant in proving that she engaged in "benefits fraud," and made no reference to "cheating" or "welfare." (Mem. in Opp'n. at 19). All of the evidence presented with respect to the defendant's application for SNAP benefits served the proper purpose of meeting the government's high burden of proof in proving attempted wire fraud.

Because the interest of justice does not require a new trial, the defendant's Rule 33 motion is also denied.

### III. CONCLUSION

Defendant's motion for a judgment of acquittal pursuant to Rule 29 is DENIED, and the defendant's motion for a new trial pursuant to Rule 33 is DENIED.

SO ORDERED.

Dated: New York, New York
May 23, 2017

*Kimba M. Wood*

KIMBA M. WOOD
UNITED STATES DISTRICT JUDGE